STANDARD FEDERAL SAVINGS AND LOAN ASSOCIATION v
CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 45724. Submitted June 16, 1980, at Detroit.—Decided
August 12, 1980. Leave to appeal applied for.

Plaintiff, Standard Federal Savings and Loan Association, filed
suit against Citizens Insurance Company of America alleging it
was entitled to payment from defendant on an instrument
drawn on defendant's bank and containing on its face the
language "Upon acceptance pay to the order of". The instru-
ment was transferred to plaintiff and later dishonored by
defendant who contended this language made payment condi-
tional upon acceptance of the drawee bank and that the instru-
ment was not negotiable. Plaintiff asserted that the language
referred to acceptance by the insured claimant and payee-trans-
feror, that the instrument was negotiable, and that it took the
instrument free of any personal defenses available to defen-
dant. Plaintiff subsequently moved for summary judgment,
which motion was granted. 46th District Court, Norman W.
Feder, J., and affirmed, Oakland Circuit Court, James S. Thor-
burn, J. Defendant appeals by leave granted alleging that the
trial court erred in finding that an instrument issued by
defendant was negotiable. *Held:*

The instrument, when read as a whole and with any ambigu-
ity construed against the defendant-maker, was negotiable, and
the trial court properly granted summary judgment in favor of
plaintiff.

Affirmed.

1. BILLS, NOTES, AND CHECKS — NEGOTIABLE INSTRUMENTS — DEFINI-
TION — STATUTES.

A writing must be signed by the maker or drawer, contain an

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur 2d, Bills and Notes § 56.
What constitutes unconditional promise to pay under Uniform
Commercial Code § 3-104(a)(b). 88 ALR3d 1100.
[2] 11 Am Jur 2d, Bills and Notes § 507.
[3, 6-8] 11 Am Jur 2d, Bills and Notes § 62.
[4] 11 Am Jur 2d, Bills and Notes §§ 139, 141, 143.
[5] 1 Am Jur 2d, Accord and Satisfaction § 18.
11 Am Jur 2d, Bills and Notes §§ 139, 141.

unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by statute, be payable on demand or at a definite time, and be payable to order or to bearer to be a negotiable instrument (MCL 440.3104[1]; MSA 19.3104[1]).

2. BILLS, NOTES, AND CHECKS — ACCEPTANCE — DEFINITION — STATUTES.

Acceptance is the drawee's signed engagement to honor a draft as presented; it must be written on the draft and may consist of his signature alone, and becomes operative when completed by delivery or notification (MCL 440.3410[1]; MSA 19.3410[1]).

3. BILLS, NOTES, AND CHECKS — NEGOTIABLE INSTRUMENTS — STRICT CONSTRUCTION.

Strict construction of negotiable instrument law should not be favored.

4. BILLS, NOTES, AND CHECKS — NEGOTIABILITY — STATUTES.

A promise or order otherwise unconditional is not made conditional by the fact that the instrument states the transaction which gave rise to the instrument, and the negotiability of an instrument is not affected by a term in a draft providing that the payee, by indorsing or cashing it, acknowledges full satisfaction of an obligation of the drawer (MCL 440.3105, 440.3112[1]; MSA 19.3105, 19.3112[1]).

5. BILLS, NOTES, AND CHECKS — INDORSEMENT — SATISFACTION OF UNDERLYING OBLIGATION.

A provision in an instrument which treats indorsing or cashing the instrument as full satisfaction of an underlying obligation of the drawer is valid.

6. BILLS, NOTES, AND CHECKS — CONSTRUCTION — INTENTION OF THE PARTIES.

The intention of the parties is to control in the construction of a note if it can be legally ascertained by a study of the entire contents of the instrument, and anything written or printed on the note prior to its issuance relating to its subject matter must be regarded as a part of the contract and given due weight in the construction.

7. BILLS, NOTES, AND CHECKS — CONSTRUCTION — PATENT AMBIGUITIES.

The actual intention of the parties shall be determined by the

court from the instrument itself in light of the circumstances in which it was given where there is a patent ambiguity in the instrument.

8. Bills, Notes, and Checks — Construction — Against Maker or Drafter.

   It is proper to construe the terms of an instrument against its maker or drafter where there exist two possible constructions of its language.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Dennis M. Haffey*), for plaintiff.

*Petrulis, Lickty & Mellon, P.C.* (by *Daniel J. McCarthy*), for defendant.

Before: N. J. Kaufman, P.J., and Cynar and J. E. Townsend,* JJ.

N. J. Kaufman, P.J. On November 19, 1977, plaintiff, Standard Federal Savings & Loan Association (hereinafter Standard), filed a complaint in the 46th Judicial District Court alleging that it was entitled to payment in the amount of $4,450 from the defendant. Plaintiff's subsequent motion for summary judgment was granted on September 18, 1978, and affirmed by Oakland County Circuit Court by an order issued April 24, 1979. Application for leave to appeal was granted by this Court on November 8, 1979.

On September 8, 1977, Citizens Insurance Company of America (hereinafter Citizens), issued a check for $4,450 payable to its named insured, Ann Moss, following a report that her automobile had been stolen. The instrument was drawn on the First National Bank of Howell (hereinafter First National). Appearing on the face of the instrument was the following language, the interpretation of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which forms the basis of this controversy: "Upon acceptance pay to the order of". On September 9, 1977, Ms. Moss endorsed the instrument and transferred it to Standard who paid full value and in so doing acted in good faith. Thereafter, the instrument was presented by Standard to First National for payment.

Subsequent to issuing this draft, Citizens became aware that Ms. Moss' report of a stolen automobile was fraudulent. Based on that fact, Citizens requested First National to stop payment on the draft in question. The draft, which had been forwarded to First National by Standard, was returned to Standard stamped "stop payment". This "stop payment" order was received by Standard after it had paid the money to Ms. Moss. Standard then instituted this action in the 46th Judicial District Court to recover payment on the instrument.

Standard contended that since it was a holder in due course, it took the draft free of any personal defenses Citizens asserted. Citizens responded that the draft in question was not a negotiable instrument, and, therefore, Standard was precluded from becoming holder in due course. The focal point of the controversy revolved around the language on the face of the instrument: "Upon acceptance pay to the order of". Citizens asserted that the language was not an unconditional promise or order to pay as required by MCL 440.3104(1)(b); MSA 19.3104(1)(b). Citizens argued that the language on the instrument made payment conditional upon acceptance of the drawee bank, First National. Standard urged that the instrument was negotiable under the UCC, as the quoted language referred only to acceptance by the payee—claimant, Ann Moss—in settlement of her insurance claim

against Citizens. The trial court agreed with Standard and granted summary judgment in its favor.

The question raised upon appeal is whether the trial court erred in finding that an instrument bearing the phrase, "Upon acceptance pay to the order of * * *" is negotiable. Citizens argues that the word "acceptance" is a term of art which is specifically defined in the Uniform Commercial Code. MCL 440.3410; MSA 19.3410. In light of that definition, acceptance may only be consummated by the drawee, and, consequently, payment of the note was conditional, precluding negotiability and, thus, precluding Standard from becoming a holder in due course. If Standard was not a holder in due course, the defense of fraud in the inducement would be available against Standard. Citizens further argues that Standard could have avoided any loss had it withheld payment to Ann Moss until the instrument had been accepted by First National.

In opposition, Standard argues that the "upon acceptance" language on the face of the instrument refers to acceptance by Ann Moss as the insured claimant and payee. Her acceptance of the instrument from Citizens was in settlement of a prior claim, and, therefore, MCL 440.3410; MSA 19.3410 is inapplicable, in that it relates only to acceptance by a drawee bank. Since the "upon acceptance" language referred to the underlying transaction which gave rise to the instrument, Standard contends that the negotiability of the instrument is not affected by this language.

Our analysis must begin with the concept of negotiability. To be a negotiable instrument, a writing must:

"(a) be signed by the maker or drawer; and

"(b) contain an unconditional promise or order to pay a sum certain in money and *no other promise, order, obligation or power given by the maker or drawer except as authorized by this article;* and

"(c) be payable on demand or at a definite time; and

"(d) be payable to order or to bearer." MCL 440.3104(1); MSA 19.3104(1). (Emphasis supplied.)

The issue of first impression of the instant action concerns (b) above. The question is whether the language on the face of the instrument ("Upon acceptance pay to the order of") renders the instrument conditional and, thus, nonnegotiable.

Defendant claims that the use of the word "acceptance" automatically triggers MCL 440.3410(1); MSA 19.3410(1):

"Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification."

Defendant contends that, by definition, the only entity capable of satisfying the "upon acceptance" language is drawee bank, First National. In support of this position, defendant cites *Jerome v Eastern Finance Corp,* 317 Mass 364, 368; 58 NE2d 122 (1944), which quoted *Berenson v London & Lancashire Fire Ins Co of Liverpool, England,* 201 Mass 172; 87 NE 687 (1909). We feel defendant's reliance on these cases is misplaced. The draft at issue in the *Jerome* case bore a specific location for the drawee to indicate its acceptance. The completion of this space by the drawee rendered such note fully negotiable. *Agricultural Insurance Co of Watertown NY v Andrade,* 146 F Supp 893 (D Mass, 1956). Therefore, the drafts at issue in the

cases relied on by defendant are distinguishable on their face from the draft at issue in this action.

Defendant's contention that the term "acceptance" must be construed within the narrow parameters of the UCC is not persuasive. Recognition that "[t]echnical construction of negotiable instrument law should not be favored", was the standard before the adoption of the UCC. *Peoples National Bank of Ypsilanti v Dicks,* 258 Mich 441, 444; 242 NW 825 (1932). In view of the policy of the UCC "to encourage the free circulation of negotiable paper", Official Comment 1 to MCL 440.3118; MSA 19.3118, we feel this strict construction is still disfavored.

In analyzing the conditional nature of the language in question, it is instructive to refer again to the UCC. MCL 440.3105; MSA 19.3105 explains the unconditional status of a promise or order. It states in pertinent part:

"A promise or order otherwise unconditional is not made conditional by the fact that the instrument * * * (b) states * * * *the transaction which gave rise to the instrument* * * *." (Emphasis added.)

Furthermore, MCL 440.3112(1); MSA 19.3112(1) dictates that:

"The negotiability of an instrument is not affected by * * * (f) a term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer[.]"

The foregoing provisions indicate that the UCC recognizes that certain language on the face of an instrument does not derogate from its negotiable nature. The facts in this action suggest that the draft was made payable to Ann Moss in full settle-

ment and satisfaction of any claim she had regarding her allegedly stolen automobile. From this context, it is justifiable to conclude that the language "upon acceptance" was an explicit reference to the *transaction* which resulted in the making of this draft. Michigan courts have continuously recognized the validity of a provision in an instrument which treats endorsing or cashing the instrument as full satisfaction of an underlying obligation of the drawer. *Board of County Road Comm'rs v Midland Contracting Co,* 247 Mich 222; 225 NW 539 (1929), *Cochran v National Casualty Co,* 261 Mich 273; 246 NW 87 (1933).

In support of the foregoing theory, plaintiff contends that in the face of a patent ambiguity, it is incumbent that the Court read the "whole" note as well as scrutinize the entire transaction. *Collateral Liquidation Inc v Renshaw,* 301 Mich 437, 442; 3 NW2d 834 (1942), summarizes this principle:

"It is a well-established rule that in the construction of a note the intention of the parties is to control if it can be legally ascertained by a study of the entire contents of the instrument * * * and anything written or printed on the note prior to its issuance relating to its subject matter must be regarded as a part of the contract and given due weight in its construction * * *. When there is a patent ambiguity in the instrument, it is competent for the court to determine from the paper itself, in the light of the circumstances in which it was given, what was the actual intention of the parties."

Applying these principles to the case in issue indicates that the instrument made explicit references to various facts surrounding the claim: date of loss, claim number, agency, insured, claimant, kind of loss, and policy number. In addition, the record discloses that the instrument was accepted by Ann Moss simultaneously with the execution of

a release. Thus, it is logical to conclude that in the document in question, the words "upon acceptance" refer to the payee agreeing to the conditions precedent rather than to the liability of the drawee. The language of MCL 440.3410; MSA 19.3410 does not relate to the facts of the case. Here, "upon acceptance" refers to someone other than the drawee, and, this being true, the foregoing section is inapplicable.

Furthermore, in regard to a patent ambiguity, this Court has noted that where there exist two possible constructions of the language in an instrument, it is proper to construe the terms most strongly against the maker or drafter. *Tweddle v Tweddle Litho Co,* 80 Mich App 418, 424; 264 NW2d 9 (1978).

In support of plaintiff's position, it cites *Glosser Stores Inc v Nationwide Mutual Ins Co,* 46 Pa D & C 2d 16, 17; 6 UCC Rep Serv 168 (1968). Just as in the instant case, here an insurance company issued a check which stated "upon acceptance pay to the order of" the insurance claimant. The insurance company stopped payment and later refused to pay upon demand on the ground that the check was not a negotiable instrument since the language made the instrument conditional upon acceptance by the drawee bank. The face of the instrument indicated that it was given in settlement of a claim under an insurance policy. On the back of the document was stated: " 'When this is "full payment", endorsement hereon is a release of all claims the payee has for loss or damage, including all known or unknown personal injuries' ". That check was also payable through a third-party drawee bank.

The court concluded that the language on the face of the instrument did not deprive it of its negotiable status, reasoning that:

"The check in question does not state, 'upon accept-ance by Nationwide Mutual Insurance Company.' Further, it is quite obvious that 'Upon acceptance pay to the order of' being opposite the name of the insured, and from the nature of the instrument itself, the acceptance refers to Paul E. Thornburg, and was in fact accepted by his endorsement and presentation to plaintiff for payment in plaintiff's course of business." *Glosser, supra,* 17.

Although the back of the instrument in *Glosser* contained an explicit release provision, the case is strikingly similar to the situation at bar. The lower courts in this action recognized that the opinion in *Glosser* was consistent with the principles of negotiability. Although that case is of no precedential value in this jurisdiction, its rationale finds support in the public policy "* * * to encourage the free circulation of negotiable paper". Official Comment 1 to MCL 440.3118; MSA 19.3118.

We, therefore, find that the document in question was not made conditional by the insertion of the language "Upon acceptance pay to the order of". The technical construction of the term "acceptance" argued by defendant is not reasonable in light of the factual situation. The principles that the instrument is to be read as a whole, the entire fact situation surrounding its execution scrutinized, and any ambiguity construed against the maker, lead to the conclusion that this instrument was negotiable. Summary judgment was properly granted in plaintiff's favor. GCR 1963, 117.2(3). We affirm.